UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY CAROLYN VAUGHN,                    Case No. 14-12496

          Plaintiff,                    Matthew F. Leitman
v.                                        United States District Judge

COMMISSIONER OF SOCIAL SECURITY           Michael Hluchaniuk
                                          United States Magistrate Judge
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTION FOR SUMMARY JUDGMENT (Dkt. 13, 14)**

## I.    PROCEDURAL HISTORY

    A.    Proceedings in this Court

On June 25, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Matthew F. Leitman referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for period of disability and disability insurance benefits. (Dkt. 2). This matter is before the Court on cross-motions for summary judgment. (Dkt. 13, 14). These motions are now ready for report and recommendation.

B.    Administrative Proceedings

Plaintiff filed the instant claim for disability insurance and period of disability benefits on March 16, 2011, alleging disability beginning August 16, 2010.  (Dkt. 11-2, Pg ID 56).  Plaintiff's claims were initially disapproved by the Commissioner on August 3, 2011.  *Id*.  Plaintiff requested a hearing and on July 26, 2012, plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Lawrence E. Blatnik who considered the case de novo.  (Dkt. 11-2, Pg ID 71-108).  In a decision dated November 9, 2012, the ALJ found that plaintiff was not disabled.  (Dkt. 11-2, Pg ID 56-66).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council on April 28, 2014, denied plaintiff's request for review.  (Dkt. 11-2, Pg ID 34-40); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

2

for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings under

Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1961 and was 49 years old on the alleged onset date.

(Dkt. 11-2, Pg ID 64).  Plaintiff had past relevant work as bartender, bus driver,

house cleaner and construction worker.  (Dkt. 11-2, Pg ID 64).  The ALJ applied

the five-step disability analysis to plaintiff's claims and found at step one that

plaintiff had not engaged in substantial gainful activity since the alleged onset

date.  (Dkt. 11-2, Pg ID 58).  At step two, the ALJ found that plaintiff had the

following severe impairments: degenerative disc disease of the cervical spine,

status-post cervical discectomy and fusion; degenerative joint disease,

chondromalacia patella, right knee, and tinnitus.  (Dkt. 11-2, Pg ID 58).  At step

three, the ALJ found no evidence that plaintiff's combination of impairments met

or equaled one of the listings in the regulations.  (Dkt. 11-2, Pg ID 59).  The ALJ

determined that plaintiff had the residual functional capacity (RFC) to perform a

sedentary work with the following limitations:

> 5. After careful consideration of the entire record, I find
> that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b).

> She can lift or carry 20 pounds occasionally and 10
> pounds frequently; walk or stand up to four hours, and sit
> at least six hours, of an eight-hour workday; with the
> need for a sit/stand option that allows her to change
> position every 30 to 45 minutes. She can never kneel or
> climb ladders, ropes or scaffolds; can only occasionally
> crouch, crawl, squat, or climb ramps or stairs; and can
> frequently balance and stoop. She can only occasionally
> reach overhead with either upper extremity. She can
> never use air, pneumatic, power, torque or vibratory
> tools, and only occasionally use foot controls with either
> lower extremity. She has no mental limitations.

(Dkt. 11-2, Pg ID 59-60).  At step four, the ALJ found that plaintiff could not

perform her past relevant work.  (Dkt. 11-2, Pg ID 64).  However, the ALJ

determined that, considering plaintiff's age, education, experience, and RFC, there

were jobs that exist in sufficient numbers that plaintiff can perform and therefore,

plaintiff had not been under a disability from the alleged onset date through the

date of the decision.  (Dkt. 11-2, Pg ID 65).

    B.    <u>Plaintiff's Claims of Error</u>

According to plaintiff, the decision of the ALJ is not supported by

substantial evidence as legal conclusions were made that were speculative.  The

ALJ stated "while treating physician, Dr. Buckingham, limited the claimant to ten

pounds lifting following the May, 2012, cervical discectomy and fusion (Exhibit

18F), that limitation also would not be expected to last for the requisite 12-month

period."  Plaintiff asserts that there is no support for the ALJ to make that

conclusion.  Plaintiff says that Dr. Buckingham as late as June, 2012, maintained the 10 pound lifting restriction.  As the claimant's onset date is August 16, 2010, the twelve month period required under the statute was satisfied.  Plaintiff contends that she should have been awarded benefits as of July 11, 2011, the date of her 50th birthday.  The ALJ's statement that the ten pound lifting restriction would be lifted was outcome-determinative for his decision.  Accordingly, due to its importance, the conclusion must be supplemented by evidence and not mere speculation of what will occur in the future. The importance of the quoted statement is significant because the regulations indicate that if the claimant is limited to sedentary activity, a finding of disabled is required.  *See* Vocation Rule 201.04.

Plaintiff also argues that Dr. Guo's note should have been considered by the appeals council and not summarily disregarded.  Plaintiff provided the Appeals Council with a brief note from her treating neurologist.  It states in its entirety as follows:

> Patient is under my care since Motor Vehicle Accident of August 16, 2010. She received treatment including Physical Therapy, C-Spine Fusion, medications and injections. Unfortunately, the patient continues and is aggravated by lifting and 10 pounds weight restriction is required to avoid aggravation of her condition.

(Dkt. 11-2, Pg ID 49).  According to plaintiff, Dr. Guo relates the claimant's

5

condition back to her automobile accident and clearly also imposed a ten pound weight restriction.  The Appeals Council summarily disregarded that note because it was dated subsequent to the claimant's date last insured.  However Social Security Ruling 83-20 clearly indicates that such a simplistic analysis is improper. It specifically states as follows for onset dates for disabilities of traumatic origin:

> For disabilities of traumatic origin, onset is the day of the injury if the individual is thereafter expected to die as a result or is expected to be unable to engage in substantial gainful activity (SGA) (or gainful activity) for a continuous period of at least 12 months.

Plaintiff's problems all stemmed from the auto accident which occurred on August 16, 2010.  Accordingly, plaintiff maintains that the Appeals Council's actions are clearly in violation of this ruling since no effort was made to analyze whether the condition spoke of in Dr. Guo's note refer back to the traumatic event which changed plaintiff's life for the worse.

Plaintiff also argues that the ALJ gave excessive weight to the consultative examination.  Shortly before the her surgery, plaintiff was examined by Dr. Lazzara.  The ALJ cited Dr. Lazzara's findings to support his decision.  Dr. Lazzara saw plaintiff prior to her surgery and indicated that she only had mild impairments.  According to plaintiff, this is inconsistent with Dr. Buckingham's finding that she required a cervical fusion, which is not a trivial operative procedure.  Plaintiff maintains, therefore, that little weight should be given to

6

Dr. Lazzara's opinion.

C.     The Commissioner's Motion for Summary Judgment

In response, the Commissioner asserts that the ALJ properly evaluated Dr. Buckingham's post-surgical recommendations.  Plaintiff first contends that the ALJ failed to properly evaluate an opinion provided by Dr. Buckingham, the surgeon who performed plaintiff's cervical discectomy and fusion.  Specifically, she asserts that there is no support for the ALJ's belief that Dr. Buckingham's lifting restriction following surgery was not expected to last twelve months. According to the Commissioner, plaintiff's contention lacks merit.  As part of the disability determination, an ALJ must consider and assess each medical opinion according to the factors enumerated in 20 C.F.R. § 404.1527.  On June 25, 2012, Dr. Buckingham examined plaintiff, just one month after performing plaintiff's post anterior cervical discectomy and fusion at level C5-6.  (Tr. 502).  The doctor noted that plaintiff's left arm symptoms had "resolved completely" and indicated that Plaintiff's follow-up x-ray scans looked "great."  *Id*.  On that date, he advised plaintiff to continue to engage in only light activities, including lifting no more than ten pounds, and scheduled a follow-up appointment for six weeks later.  *Id*. He also prescribed a narcotic pain medication for plaintiff's complaints of chronic back pain.  *Id*.

In discussing Dr. Buckingham's post-operative recommendation, the ALJ

7

explained that:

> While treating physician, Dr. Buckingham, limited the
> claimant to ten pounds lifting following the May 2012
> cervical discectomy/fusion [(Tr. 502)], that limitation
> also would not be expected to last for the requisite
> 12-month period.

(Tr. 31). According to the Commissioner, the ALJ reasonably understood Dr.

Buckingham's recommendation to be a temporary measure to aid plaintiff's

recovery after her surgery. In May 2012, just prior to the procedure, Dr.

Buckingham indicated that the main justification for the surgery was plaintiff's

neck, left shoulder, and arm pain and that "[i]t should take the fusion about [three]

months to heal postoperatively." (Tr. 501). Thus, a lifting restriction

recommended just one month after the surgical procedure, in the context of

plaintiff's report that her left arm pain had "resolved completely," is reasonably

understood to be a temporary measure to speed recovery within the healing period

anticipated by the physician. *See e.g.*, *Davis v. Comm'r of Social Sec.*, 2012 WL

892446, at *7 (W.D. Mich. 2012) (finding it reasonable for an ALJ to view a

physician's lifting restrictions as temporary, not permanent, where, inter alia, the

limitations were provided four months after the plaintiff's surgery). Plaintiff has

not demonstrated that Dr. Buckingham's post-operative lifting limitation was

intended to persist indefinitely (or, at minimum, for twelve months). *See Foster v.*

*Halter*, 279 F.3d 348, 354 (6th Cir. 2002) (it is the plaintiff's burden at Steps 1

through 4 to prove disability); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (same); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

The Commissioner says that Dr. Buckingham's notes, which reflect just mild limitations, support the ALJ's reading of a temporary limitation. Even before the surgery, Dr. Buckingham described plaintiff as a "well-developed overweight woman in no acute distress." (Tr. 500). On examination, he noted that plaintiff had a "mild" limitation in her neck's range of motion with "some" increase in pain. *Id*. The doctor observed that Plaintiff could fully abduct her arms with "good power." *Id*. He also noted "mild weakness" in plaintiff's left forearm flexors, but indicated that her triceps strength, hand grasp strength, wrist extensors, and finger extensors were all intact. *Id*. Dr. Buckingham also observed that Plaintiff retained normal sensation over both upper extremities (with the exception of her left thumb and index finger, which reportedly had a relative decrease in sensation). *Id*. And in discussing plaintiff's MRI scan, the doctor noted spondylotic changes at C5-6 and a small central protrusion at C3-4, but expressly stated that there was "no significant cord impingement." *Id*. One month after the surgery, as discussed above, Dr. Buckingham described an improved condition and indicated that he would continue Plaintiff's post-operative

limitations.   (Tr. 502).  The record contains no other treatment notes from Dr. Buckingham, apart from his uneventful description of the surgical procedure itself. (Tr. 498-99).  According to the Commissioner, nothing in Dr. Buckingham's treatment notes supports a permanent ten-pound lifting restriction.

Plaintiff next argues that the ALJ's assessment of Dr. Buckingham's lifting restriction was "outcome determinative," alleging that, had the ALJ read Dr. Buckingham's recommendation to be permanent rather than temporary, plaintiff would have been found disabled as of her 50th birthday under the Medical Vocational Guidelines (Grids), found at 20 C.F.R. pt. 404, subpt. B, App. 2. According to the Commissioner, plaintiff's argument lacks merit.  At step five of the sequential evaluation, the burden of proof shifts to the Commissioner to demonstrate that a significant number of jobs exist in the regional or national economy that plaintiff can still perform despite her age, education, work experience, and residual functional capacity (RFC).  *See Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  To make that showing, an ALJ must rely on the Grids and, in some cases, vocational expert testimony.  20 C.F.R. §§ 404.1520(c)(2), 404.1569, 404.1569a(d).

Plaintiff contends that, had the ALJ accepted Dr. Buckingham's lifting limitation as permanent, the ALJ should then have applied Grid Rule 201.04, based on plaintiff's age at the time of the ALJ's decision.  The Commissioner

10

contends that plaintiff's argument fails in two respects. First, Grid Rule 201.04 would not have applied to plaintiff's age category at any relevant time. As the ALJ acknowledged in his decision, plaintiff was forty-nine years old on the date she alleges she became disabled, making her a "younger individual" (ages 18-49). (Tr. 31), 20 C.F.R. § 404.1563(d). The ALJ also noted that plaintiff changed age categories when she turned fifty, making her "closely approaching advanced age" (ages 50-54). 20 C.F.R. § 404.1563(d). According to the Commissioner, based on plaintiff's age categories – and the fact that plaintiff had at least a high school education, was able to communicate in English, and had a semi-skilled work history (as a bartender and a bus driver) – even if the ALJ had found that plaintiff was only capable of performing sedentary work, it is Grid Rule 201.11 that would have applied, not Grid Rule 201.04, as Plaintiff alleges. *See* 20 C.F.R. pt. 404, subpt. B, App. 2, §§ 201.11, 201.04. The Commissioner points out that Grid Rule 201.04 applies to individuals who are of "advanced age" (55 or older) with only an unskilled work history. And, Grid Rule 201.11, which applies to those closely approaching advanced age who are skilled or semi-skilled, would have directed a finding of "not disabled." 20 C.F.R. pt. 404, subpt. B, App. 2, § 201.11.

The Commissioner also argues that even if the ALJ had viewed Dr. Buckingham's lifting restriction as permanent, a lifting restriction alone would not have reduced plaintiff's work capacity to the sedentary level. Sedentary work

involves lifting no more than ten pounds at a time and walking and standing only occasionally.  20 C.F.R. § 404.1567(a).  In this case, however, the ALJ found that plaintiff was capable of walking or standing for up to four hours during an eight-hour workday—an ability that exceeds the limitations for sedentary work. (Tr. 26); 20 C.F.R. § 404.1567(a).  Such a work capacity would fall somewhere between the sedentary and light work classifications.  Thus, contrary to plaintiff's argument, there was no underlying Grid Rule that directed a finding of disabled. Even if the ALJ should have viewed Dr. Buckingham's post-operative recommendation as a permanent restriction, the Commissioner maintains that plaintiff still has not shown that it would have altered the outcome of this case because the applicable Grid Rules both directed a finding of "not disabled"—not "disabled," as she alleges.

The Commissioner also argues that the Appeals Council properly declined to review the ALJ's decision based on the submission of an opinion from Dr. Guo that was dated after the ALJ rendered his decision.  Dr. Guo's February 12, 2014 note was never provided to the ALJ.  Instead, it was submitted to the Appeals Council after the ALJ rendered his decision on November 9, 2012.  (Tr. 2).  The Appeals Council considered the new document, but declined to review the ALJ's findings because Dr. Guo's letter, which restricted plaintiff to lifting just ten pounds, was "about a later time" and "[t]herefore, [did] not affect the decision

12

about whether [plaintiff] w[as] disabled at the time [plaintiff was] last insured for disability benefits." *Id*. A party may submit additional evidence to the Appeals Council following a decision by an ALJ when requesting review. 20 C.F.R. § 404.976(b). "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence *only where it relates to the period on or before the date of the [ALJ] hearing decision*." 20 C.F.R. § 404.970(b) (emphasis supplied); *see Schill v. Comm'r of Soc. Sec. Admin.*, 2013 WL 5566635, at *11 (N.D. Ohio 2013) ("Because the Council reviewed the new evidence and applied the appropriate standard set forth in the regulations, Plaintiff's argument has no merit.").

On February 10, 2014, Dr. Guo wrote "The patient is under my care for neck pain and headache since MVA 8/16/2010. She required treatment including PT, c-spine fusion, medications, and injections. Unfortunately, the pain continues and [is] aggravated by lifting and 10 pounds weight restriction is required to avoid aggravation of her conditions." (Tr. 16). According to the Commissioner, there is no indication in the note itself that Dr. Guo's restriction pertains to the period preceding the ALJ's decision on November 9, 2012—nearly two years earlier. Moreover, the Commissioner asserts that Dr. Guo's treatment notes—all of which significantly predate plaintiff's surgery in May 2012—fail to support the limitation she provided in February 2014. On the contrary, despite plaintiff's

13

complaints of headache and neck pain, Dr. Guo's notes consistently observed normal muscle strength, normal gait (or "slightly limping"), intact sensation, and reflexes. (*See e.g.*, Tr. 376, 384, 385, 386, 387, 389, 391, 395). On January 21, 2011, an electromyography report showed "no electrodiagnostic evidence of mononeuropathy, cervical radiculopathy, or large fiber polyneuropathy affecting the bilateral upper extremities." (Tr. 375). Additionally, none of Dr. Guo's notes include a lifting limitation. (Tr. 375-95). Instead, they include only limitations relating to overhead reaching and repetitive actions. For example, in October 2010, Dr. Guo wrote that she "instructed [plaintiff] to limit her overhead work." (Tr. 391). In February 2011, she noted that plaintiff's "headache and neck pain tends to come on when she overdoes certain activities that would require her to bend her neck." (Tr. 386). And in May 2011, the doctor suggested that "prolonged activity will aggravate [plaintiff's] neck pain and headache." (Tr. 384). Each of those records, notably, preceded plaintiff's corrective surgery. Moreover, during her administrative hearing, plaintiff confirmed that Dr. Guo had only advised her to avoid overhead work. (Tr. 49). When asked what type of restrictions Dr. Guo had recommended, plaintiff responded, "Nothing lifting over my head" and also testified that Dr. Guo "never really gave me any restrictions that I can remember pound wise." *Id*. According to the Commissioner, plaintiff's argument should fail because she has not demonstrated that the Appeals Council

14

erroneously declined review in this case.

The Commissioner also argues that the ALJ properly relied on the opinion provided by Dr. Lazzara. Plaintiff contends that Dr. Lazzara's opinion should not have been relied upon because it indicated that plaintiff's condition was "mild," which is "certainly inconsistent with Dr. Buckingham's finding that she required a cervical fusion which is certainly not a trivial operative procedure." Pl. Brief at 5. The Commissioner says that plaintiff's argument lacks merit.

On March 22, 2012, Dr. Lazzara examined plaintiff and provided an opinion about her physical limitations. (Tr. 475-79). On examination, the physician observed no evidence of joint laxity, crepitance, or effusion; but noted "some diffuse tenderness" in plaintiff's lower back and "mild tenderness" in her right knee. (Tr. 476). He reported that plaintiff's grip strength was intact and her dexterity unimpaired. *Id*. Dr. Lazzara noted that Plaintiff could open a door; had no difficulty getting on and off the examination table and heel- and toe-walking; and had just "mild difficulty" squatting and standing on either foot. *Id*. He observed a normal range of motion in Plaintiff's cervical spine, dorsolumbar spine (except for extension limited in the last five degrees), shoulders, elbows, hips, knees, ankles, and wrists. (Tr. 476-78). The doctor observed that plaintiff's cranial nerves were intact, her motor strength and tone were normal, her sensation was intact to light touch and pinprick, her Romberg testing was negative, she had

15

normal reflexes, and she walked with a normal gait (without the use of an assistive

device).  (Tr. 478).  Based on his examination, Dr. Lazzara concluded that:

> The patient does have some residual inflammation to the
> right knee joint but her range of motion was well
> preserved. She did have some tenderness in the lower
> lumbar spine which appeared to be ligamentous. Her
> upper extremities and neck did appear relatively stable
> although she does complain of symptoms suggestive of
> post concussive disorder. She did undergo prolonged
> physical therapy. She remains somewhat active but
> avoids any repetitive work. At this point
> anti-inflammatories and supportive care would be
> indicated. The patient's degree of impairment at present
> appears mild and she may get increased remediability
> over time. Her prognosis is fair.

(Tr. 479).

The Commissioner asserts that Dr. Lazzara's examination findings and

opinion are not inconsistent with Dr. Buckingham's pre-operative medical

findings.  Although Dr. Buckingham told plaintiff that a discectomy and fusion at

level C5-6 (but not at C3-4) was a "consideration," his examination note still

shows a relatively mild condition.  (Tr. 500-01).  In May 2012, Dr. Buckingham

wrote that plaintiff's examination revealed a "mild limitation" of her neck's range

of motion, with "some increase" in pain.  (Tr. 500).  He noted that plaintiff could

"fully abduct her arms" and had "good power over her arm abductors."  *Id*.  The

doctor also observed some "mild weakness" in plaintiff's left forearm flexors, but

noted that her triceps strength, wrist extensors, finger extensors, and hand grasp

strength were fully intact bilaterally.  *Id*.  Dr. Buckingham also observed intact

sensation over plaintiff's upper extremities ("save for the left thumb and left index

finger with a relative decrease in sensation").  *Id*.  In discussing the MRI scan, the

physician noted spondylotic changes at level C5-6, with a small central protrusion

at level C3-4, but "no significant cord impingement."  *Id*.  According to the

Commissioner, the mere fact that plaintiff underwent spinal fusion does not,

standing alone, undermine Dr. Lazzara's medical findings, which were largely

consistent with the examination notes from the surgeon who later performed the

procedure.

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

18

appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial

19

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become

20

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe

impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C. <u>Analysis</u>

The difficulty in this case is the significant change in plaintiff's condition just months before the decision – cervical fusion surgery – and the lack of any medical opinion regarding her functional limitations after she recovered from that surgery. Plaintiff was treating with a pain management specialist, her surgeon, a neurologist, and her family doctor. Yet, there are no medical opinions in the record regard her long-term functional limitations after her surgery. In addition, there is no consulting examination or opinion which reviewed her post-surgical condition. In this case, it is difficult to lay blame on the ALJ for the shortcomings in the record as plaintiff was represented by counsel throughout this process. However, regardless of where the blame should be placed, the record is woefully incomplete as to a most critical issue – plaintiff's functional limitations after she recovered from her surgery. Importantly, in weighing the medical evidence,

23

"'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record.").  In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011).

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d).  Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data.  *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating

24

physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'"), quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").  As the *Deskin* court explained:

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the "medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) ... [the Commissioner may not] make the connection himself."

*Deskin*, 605 F.Supp.2d at 912, quoting *Rohrberg v. Apfel*, 26 F.Supp.2d 303, 311

(D. Mass. 1998) (internal citation omitted)[2]; *see also Mitsoff v. Comm'r of Soc. Sec.*, 2013 WL 1098188, *8 (S.D. Ohio 2013) (collecting cases).

There are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a current medical source. *Mitsoff*, 2013 WL 1098188, *9, citing *Deskin*, 605 F.Supp.2d at 912 ("To be sure, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment"). This does not appear to be such a case, particularly the record is devoid of any post-surgery medical opinions. Under these circumstances, an expert medical advisor is absolutely critical to properly evaluating plaintiff's impairments, symptoms, and functional limitations. Thus, the undersigned concludes that this matter should be remanded so that the ALJ can obtain the opinion of an expert medical advisor on plaintiff's post-surgery residual functional capacity (during the period in which she remained insured) and updated opinions and records from plaintiff's treating physicians regarding the same.

---

[2] "Properly understood, *Deskin* sets out a narrow rule that does not constitute a bright-line test." *Kizys v. Comm'r of Soc. Sec.*, 2011 WL 5024866 at *2 (N.D. Ohio 2011). Rather, *Deskin* potentially applies in only two circumstances: (1) where an ALJ made an RFC determination based on no medical source opinion; or (2) where an ALJ made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence. *Id.* In this case, there are no medical opinions, treating or otherwise, regarding plaintiff's functional limitations post-surgery.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 17, 2015                    s/Michael Hluchaniuk
                                         Michael Hluchaniuk
                                         United States Magistrate Judge

## CERTIFICATE OF SERVICE

    I certify that on August 17, 2015, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record.

                                         s/Tammy Hallwood
                                         Case Manager
                                         (810) 341-7887
                                         tammy_hallwood@mied.uscourts.gov

28